Good morning, your honors. May it please the court, Thomas E. Walsh appearing on behalf of the petitioner, Abdi Farah, in an immigration case which is an appeal of a denial of a convention against torture claim. The petitioner has filed two bases for this appeal. One is that substantial evidence in the record supports entitlement to cap claim relief. And secondly, the petitioner has denied his due process rights under the Fifth Amendment to a fair and reasonable hearing to present the evidence in his favor. Who does he fear will subject him to torture? Well, the petitioner is a member of the Maharan clan, and the Hawaii clan is the clan that is perpetuating extensive violence in the country now. The State Department reports support that. In fact, the United States So he fears persecution by this clan, torture by this clan? Yes, yes, your honor. And has the clan ever done anything to him at all? No, no, your honor. The clan has not done anything to him. So this is a generalized fear based on membership in a group? Well, your honor, a cap claim does not require a membership in a particular group, but that is indeed what the basis of his claim is. I belong to a group, and that group's in trouble, and therefore I'm going to be tortured if I go back. Well, that's correct, your honor. In 1989, the petitioner was granted a student visa. He was a member of the Maharan clan at that time. The Maharan clan ruled the country. In 1992, the president of the country was forced to leave the country. It developed into chaos, and the United States government granted temporary protected status to all continues to this day. And indeed, the petitioner obtained temporary protected status in 1992, but did not renew it in a timely fashion and was subsequently denied protection. But as things stand even today, Somalia is a country that does not have a functioning government, and our country, the United States, does recognize that fact. Now the lack of credibility finding by the immigration judge was based upon the petitioner's testimony regarding the deaths of family members. Now the information regarding the deaths of family members is in this country, and it was reported by an individual with some clan connections that he referred to as uncle, who himself did not view the killing of the petitioner's brother and sister. So you've got double hearsay here at best? Well, your honor, the facts of the killing were never challenged below. Do you have double hearsay at best? What we have is third-hand accounting of the details of the killing. Now the people themselves have not surfaced, and there has been no evidence presented in the record, and indeed the government did not even cross-exam on this issue. And the government's brief indicates that even if the petitioner's family members were murdered, as alleged by members of the Hawaii clan, that that in and of itself does not establish entitlement. And we contend that that is erroneous, your honor. So your position is that every member of the clan to which your client belongs are entitled to cat relief in the United States? Yes, your honor. And the United States recognizes that by granting them temporary protected status if they are here. Now, the deaths were reported to my client sometime after 1992, 1995. There don't even have to be any deaths. That's true, your honor, but it is a plausible explanation perhaps on why he didn't extend his own temporary protected status, because his testimony was that he fell into a deep depression upon learning of the... I would think that would be a greater reason to extend your temporary protected status if people told you that your family is being wiped out. I understand, your honor, but inattentiveness to important issues is not an unusual reaction to deaths in the family. We label these things as inattentive, and then he doesn't show up at a hearing? Well, your honor, there was an asylum hearing. I think I'm not entirely sure what the details of his failure to show up, but he wrote repeated letters to the immigration authorities... After the fact. Yes, your honor, to attempt to have an opportunity to present his case. Now, again, there was no cross-examined by the government. There's no evidence in the record to dispute the fact that, number one, he's a member of the Maharan clan, number two, he is a Somali national, and number three, that family members did die. There is no evidence to contest either of those conclusions. Is it official homeland security policy, any and all members of this clan who come to the United States are allowed to remain here? Well, your honor... By virtue of belonging to that clan? I don't think that the official homeland security policy describes it in that way. I believe that the official homeland security policy is that any Somalian who is found in the borders of the United States is entitled to temporary protected status because of the lawless conditions that are occurring in Somalia, and primarily those are warlord-governed areas predominantly by the Hawaii clan. So his problem here is that he didn't ask for that protection? He didn't renew the protection, your honor, and subsequently, when the convention against torture provision was enacted into law, he filed a motion to reopen, which was granted, and he then had an opportunity to present his case on those bases. And that leads me to the second basis for the appeal, and that is the record is replete with instances where the immigration judge simply did not allow the petitioner to present his case. There is some confusion in the record, but the conduct at the hearing, and this Ninth Circuit Court of Appeals has repeatedly indicated that they will not tolerate type of intimidating conduct by an immigration judge in attempting to unravel the facts of a petitioner's claim. The quote in the brief is that I'll wait until the end and spring it on you. That's conduct that simply should not be allowed in attempting to flesh out details of a reasonable claim. And again, the government's acknowledgement of temporary protected status for these individuals from this country, beyond dispute, recognizes that this is an area of the world where the fear of torture is commonplace. This is not a fabricated application, and the petitioner certainly should have been provided, and the petitioner's attorney, with every opportunity to present his case in a reasonable manner without being subjected to harassment and page-and-a-half questions and accusations, which the courts have previously said often will intimidate people from foreign countries who are attempting to flesh out their story, and that's what occurred in this particular case. Thank you, Counsel. Thank you, Your Honor. May it please the Court, my name is Jennifer Lightbody, and I represent the Respondent. The record evidence in this case does not compel the conclusion that Mr. Farr demonstrated eligibility for cap protection where the immigration judge found the petitioner was not credible, and that finding is supported by specific and cogent reasons. Elaborate. What's the specific and cogent reason used by the IJ to find this applicant not credible? In his asylum, I'm sorry, within his CAT application, he said that I am a member of this clan, and then in his testimony before the immigration judge, he said my family is killed because of their membership in the clan, and then as a result of that, therefore, I should get cap protection. And what the immigration judge found was specifically in his application, he said that his sister died of injuries when she was in Kenya, and that's what he said in his application. He didn't say that she was killed because of her membership in the clan, but then in his testimony, he said that his brother and sister were killed because of their membership in the clan, and he made no mention of the fact that she died later in Kenya of her injuries. He said that she died in Somalia, and that is an inconsistency that the petitioner failed to explain. Isn't that pretty minor if you read the whole record? I mean, he tried to explain, look, this is like, you know, Rhode Island and California. This is sort of an area where Kenya this, Kenya that, and he's operating off a double hearsay anyway, at least. Well, and he claimed that he knew what had happened. He didn't say, he didn't claim that he didn't know, and the immigration judge made that finding, but the issue was not, or the discrepancy was not on, well, did she die in Somalia versus dying in Kenya and the physical location of that, but it's how she died. He said first that in the application that she died of her injuries, that she was able to travel, she traveled and then later died. Of the injuries? Of the injuries, and then in his testimony before the immigration judge, he said no, she was killed because of her, she and the brother were killed because of their membership in the clan. He didn't say anything about the injuries. Well, how could she die without an injury? I mean, if she's killed, she gets injured, and she dies. I don't see the inconsistency. Well, the inconsistency is that whether she was killed there, whether she was raped and killed at that particular time, or that she survived and later died in the immigration. Of her injuries. Of her injuries. The injuries from the people who attacked her because of her membership in the clan. I mean, that's the way I read it. And the immigration judge asked him to explain that inconsistency. Did she die then and there and die as a result of her membership in the clan, or was she injured and then she died later when she arrived in Kenya? Does it make any difference? Whatever the truth is, does it make any difference where she died? Where? Where she died. Well, the immigration judge found that the geographic location, the discrepancy in that, which he tried to explain, didn't make a difference. It really doesn't matter. It doesn't help her or his case to know that the reality is that she died in one place or another. What is significant is where were the injuries inflicted and who did it and for what reason? Isn't that more important? Well, I think. Or I guess even the reason isn't important in this case. Well, it's a finding that the immigration judge made that his testimony was inconsistent with the application. He did find, though, that the sister wasn't killed because of her membership in the clan. I didn't see any finding that she, therefore, I doubt she wasn't killed. Or I doubt that she was killed, and I don't think she was killed because of her membership in the clan. He just says, I caught you between Kenya and Somalia. And that's a specific, cogent reason for doubting the petitioner's claim. It didn't make any difference. I mean, if he had taken the next step and said, I conclude from this that your sister didn't die at all, this is all testimony that can't be relied on. Well, he made the adverse credibility finding based on that. So in an adversarial proceeding, the immigration judge wasn't then required to believe any of the other testimony, although he didn't make that specific finding. He didn't say that, though. He didn't say that, but he's not required to. It was almost like, no, you said red. It was blue, so it's over, without explaining why the difference between red and blue makes any difference. And he gave him an opportunity to explain the discrepancy, and the petitioner was unable to explain that discrepancy. Was she killed then and there because of her membership in the clan, or did she die later when she traveled to Kenya? The argument is made that the IJ overstepped the boundaries of appropriate behavior in mistreating this witness as a witness. Your answer to that is what? It does seem that the IJ was not happy. Well, the immigration judge was understandably upset because the petitioner wasn't answering the question about how to explain the discrepancy. This is about springing something on somebody at the end. Well, again, I think that the immigration judge was trying to explain the problem with the case, and that was an adverse credibility finding. What did the IJ say? I'm sorry? What did the IJ say? Well, he tried to... Where is it somehow in due process to say, okay, fine, I'm going to spring a trap on you at the end then? Well, the immigration judge did try to explain, look, there's a big problem here with the inconsistency, and you need to explain that discrepancy. And so the immigration judge gave the attorney an opportunity to try to get the client to explain, and, in fact, the immigration judge tried to get the petitioner to explain, and he didn't. And the immigration judge became frustrated by the fact that they wouldn't answer the question and said, okay, well then I'll reserve that until the end. But I think what's important here, Your Honor, is that the petitioner didn't file a reply brief, and here in court today he's not indicated what evidence he could have presented that the immigration judge prevented him from presenting. What additional evidence was there that goes to reviving his credibility? And the attorney was allowed to ask additional questions, and none of those went to the credibility of the petitioner. And so he can't claim prejudice because he hasn't shown what he couldn't present based on the immigration judge's actions. And so I would submit that his due process claim is without merit. Can you help me just a second? Sure. When you started your argument, you quoted from what the petitioner said about the death of his sister in Somalia. Would you state that again for me, please? Yes, Your Honor. I'm looking for it here in front of me. When you started your argument, you quoted. I believe that I quoted page 93 of the record of his testimony where he claims that his brother and sister were killed because of their membership in the Maheran clan. But you go on and say something about the location. And he also said at page 90 of the administrative record that she died in Somalia. And he never said that she died because of her injuries. That wasn't his testimony. That was what appeared in his application. He said that she had died of her injuries. And the issue here before the court is whether the immigration judge gave a specific cogent reason. I understand that. Maybe I'll speak it out for myself. What I'm concerned with is whether that statement is necessarily referable to the place of her death as opposed to the place of her injuries. I'll speak it out for myself in the record. Well, I would submit that he did say that she died in Somalia before she ever reached Kenya. And then in his application it was that she died of her injuries in Somalia. So it's that she continued on and then died in Kenya. I understand. I understand. I don't want to bother you with my concerns. I'll figure it out. Okay. And in this case, the issue is whether there are specific cogent reasons. What the petitioner is trying to get this court to do really is to reweigh the evidence. And the question here is whether substantial evidence supports the immigration judge's adverse credibility finding. And the court had previously brought up a matter that I'd like to address, and that is whether the fact that he was a member of this clan entitles him to cat protection. And the answer is no. Just simply because of his membership doesn't entitle him to cat protection. The test here is whether it is more likely than not that he will be tortured upon his removal to Somalia. And that's the test. And the immigration judge found that he was not credible and based the denial of protection based on the adverse credibility finding. Thank you, Counsel. Thank you. You may respond. Your Honors, the government misspoke when it suggested that the inconsistency regarding the details of the sister's death related to whether or not she was killed as a result of membership in the Maharan clan. There is no dispute that that was the basis for the attack and the rape and the subsequent death. The only issue was whether or not she died on the spot or whether the bus continued on its way and she subsequently died. It appears that regardless of what location she died in, it was near the Somali-Kenya border, and the extent of her injuries were extensive enough to produce the death. So the issue of clan membership was not an issue of inconsistency in the petitioner's case. And, again, as the Court has pointed out, we're dealing with double or triple hearsay on the details of the death. And the death at the time of this hearing had occurred 11 or 12 years earlier. So there are substantial reasons why the exact location of the moment of death would not be in the petitioner's realm of knowledge. Thank you, Your Honors. Thank you, Counsel. The case just argued is ordered submitted. The last case on the calendar for this week is Carlos Rene Rivas-Gomez v. Casper.
judges: Leavy, Trott, Pollak